Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
AQUA TERRA AERIS LAW GROUP LLP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (415) 326-3173
Email: amb@atalawgroup.com

*Attorneys for Plaintiff*
HUMBOLDT BAYKEEPER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBOLDT BAYKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA REDWOOD COMPANY, a California corporation,<br><br>Defendant. | Civil Case No.: 4:16-cv-06970-HSG<br><br>[~~Proposed~~] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq.) |

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Humboldt Baykeeper and Defendant California Redwood Company. The entities entering into this Consent Decree are collectively referred to as "the Parties."

**WHEREAS**, Humboldt Baykeeper ("Baykeeper" or "Plaintiff") is a non-profit association organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of Humboldt Bay, the Humboldt Bay Watershed and the water bodies within the Humboldt Bay Watershed.

**WHEREAS**, Defendant, California Redwood Company, is a corporation duly organized and existing under the laws of the State of California ("CRC" or "Defendant").

**WHEREAS**, Defendant is the owner and operator of two (2) facilities located in Humboldt County near Eureka, California, (collectively "the Facilities"):

(1) The CRC Chip Facility is a 16-acre site used to receive, store, and load wood chips for shipping ("Chip Facility") located at 405 Bay Street, Fairhaven, CA 95564, with the Waste Discharge Identification ("WDID") number of 1 12I023751. Industrial activities at the Chip Facility fall under Standard Industrial Classification ("SIC") Code 2421 – Sawmills and Planing Mills, General; and

(2) The CRC Samoa Facility is a 60-acre site primarily used to store logs, with wood chippers occasionally used onsite ("Samoa Facility") located at #1 Jimmy Smith Drive south of the community of Samoa in Humboldt County, CA 95564, with the Waste Discharge Identification ("WDID") number of 1 12I020584. Industrial activities at the Samoa Facility fall under SIC Code 2421– Sawmills and Planing Mills, General.

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342.

**WHEREAS**, Baykeeper contends that Defendant's operations at the Facilities result in discharges into Humboldt Bay (the "Receiving Waters") and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on September 27, 2016, Baykeeper served Defendant, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the North Coast Regional Water Quality Control Board, ("Regional Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facilities (a true and correct copy of Baykeeper's 60-Day Notice is attached as **Exhibit A** and incorporated herein by reference);

**WHEREAS**, on December 5, 2016, Baykeeper filed a complaint against Defendant alleging Defendant is in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendant denies all allegations and claims contained in the 60-Day Notice and the Complaint and reserves all rights and defenses with respect to such allegations and claims;

**WHEREAS**, the Parties have agreed that it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

**1.** For the purposes of this Consent Decree, the Parties agree: 1) the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A); 2) venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations took place are located within this District; 3) the Complaint states claims upon which relief may be granted

against Defendant pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365; 4) Plaintiff has standing to bring this action; and 5) the Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**OBJECTIVES**

**2. Compliance with General Permit and Clean Water Act.** It is the express purpose of the Parties entering into this Consent Decree that throughout the Term of this Consent Decree, which is defined below in Paragraph 4, Defendant shall commence all measures needed to operate the Facilities in full compliance with applicable requirements of the Storm Water Permit, and the Clean Water Act, subject to any defenses available under the law. All actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**EFFECTIVE DATE, AND TERM OF CONSENT DECREE**

**3. Effective Date.** The Effective Date of this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

**4. Term.** The Term of this Consent Decree shall cover four (4) complete Wet Seasons[1] following the implementation of the Best Management Practices ("BMPs") set forth in Paragraphs 6.1 through 6.11 below, with the exception of the Treatment BMPs (*see* Paragraphs 6.1 and 6.2) at the Chip Facility that may require permitting, plumbing, and installation, and thus additional time to implement. Should an Action Plan be required per Paragraphs 5 and 14, below, based on sampling results from the 2019-2020, or 2020-2021 reporting years[2], the Consent Decree will terminate upon complete implementation of the measures described in the Action Plan. Should no Action Plan be required as described above, or implementation of the BMPs required in the Action Plan are complete, the Term of this Consent Decree shall run from the Effective Date until May 31, 2021.

---

[1] The "Wet Season" includes October 1st through May 31.
[2] A reporting year is July 1 to June 30.

[Proposed] CONSENT DECREE    4

**COMMITMENTS OF DEFENDANT**

**5. BAT/BCT and Benchmark-Based Limits.** If Defendant receives storm water sampling data demonstrating two or more exceedances of the same Table 1 Parameter Limit at either of the Facilities during one reporting year within the term of this Consent Decree, or fails to comply with any of the requirements of the Storm Water Permit, Defendant shall provide Baykeeper with an Action Plan for that Facility in compliance with the "Action Plan" requirements set forth below in Paragraphs 12 and 14 of this Consent Decree.

**Table 1: Limits for Storm Water Discharges**

| Contaminant (All metals are total recoverable) | Limit (all but pH in mg/L) | Source of Limit |
|---|---|---|
| pH | 6.0-9.0 s.u. | 2008 EPA Benchmark |
| Zinc | 0.26 mg/L | 2008 EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | 2008 EPA Benchmark |
| Oil & Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |

**6. Best Management Practices.** In addition to maintaining the current BMPs at the Facilities, within ninety (90) days of the Effective Date, unless otherwise noted, Defendant shall submit permit applications necessary (if any) to implement BMP upgrades identified herein as Exhibit C, to comply with the provisions of the Consent Decree, the Storm Water Permit and the Clean Water Act. Specifically, Defendant shall develop and implement BMPs to reduce and/or prevent contamination in storm water discharges from the Facilities consistent with the use of the BAT and the BCT and in compliance with applicable water quality standards ("WQS").

**CHIP FACILITY:**

**6.1** Discharges at SW-1S and SW-1N require treatment. Defendant will install treatment media into the above-ground storm water conveyance swales to chemically treat pH, and provide activated carbon or other appropriate filtration media to address Chemical Oxygen Demand ("COD"). This initial structural BMP treatment solution is described in Exhibit B incorporated by reference herein. If monitoring results demonstrate two or more exceedances of the same Table 1

Parameter Limit in any reporting year during the Term of this Consent Decree, Defendants shall upgrade the system to include above-ground treatment as described in Exhibit C incorporated by reference herein, or an equivalent or better alternative if available. Permit applications for implementation of Exhibit C (if any) will be submitted to applicable agencies within thirty (30) days of decision to implement. Construction of Exhibit C solution will be completed within ninety (90) days of receipt of final permit approval. Defendant shall provide Baykeeper with all final permitting applications within fifteen (15) days of submission, and all permitting notices on progress from all applicable agencies within fifteen (15) days of receipt from any agency.

**6.2** By no later than October 15, 2017, Defendant shall have installed the treatment solution described in Exhibit B. If monitoring results demonstrate two or more exceedances of the same Table 1 Parameter Limit in any reporting year during the Term of this Consent Decree, Defendant agrees to install, prior to October 15, of the next reporting year, an upgraded, fully operational Treatment solution (Exhibit C, or an equivalent or better treatment solution if available) at SW-1S and SW-1N, resulting in effectively treated storm water discharge. If as a result solely of delay caused by regulatory agencies or other factors beyond Defendant's control subject to the force majeure provisions in Paragraph 40, Defendant is unable to install and operate the upgraded Treatment solution by October 15, of the next reporting year, the Parties shall confer regarding the status of the Consent Decree, including but not limited to, the possibility of extending the time to install an upgraded, fully operational Treatment solution (Exhibit C or an equivalent or better alternative) by an additional three (3) months.

**6.3** Within Drainage Area 1, storm water drains west toward the Electrical Yard, resulting in discharge that is not currently sampled. Storm water runoff from the chip pile in the location north of the scale, will be stopped by removing pavement from an area of suitable size to allow full infiltration. This area will be created by removing pavement from an area approximately 3 feet wide and the length of the fence line north of the scale, and backfilling with open graded gravel. An additional infiltration area will be created in the low corner located west of the scale in the same manner, suitable to allow full infiltration of storm water prior to discharge from the site. Both

of these new infiltration areas will be added to the SWPPP as monitoring and potential sampling points if necessary during heaving storms.

**6.4** Defendant shall ensure that all vehicle maintenance will be done under a roofed structure.

**6.5** Defendant shall implement a chip rotation schedule such that no chips are left on-site for longer than 12 months, and to remove heavily degraded chips from the bottom of the pile when ships are loaded, rather than maintaining them for extended periods of time as an "operational blanket" layer. Defendant has executed export contracts not available until recently, which allow them to commit to this Operational BMP, not previously possible for the startup operation.

**6.6** Defendant shall update the SWPPP in accordance with Paragraphs 6.1, through 6.5, and shall update the SWPPP map to adequately represent proper drainage flows from all drainage areas at the Chip Facility.

**SAMOA FACILITY:**

**6.7** Defendant shall remove and properly dispose of all boneyards, including but not limited to, all oxidized iron associated with rusted former infrastructure of the former Planing Mill. Defendant shall also tear down the wind damaged cooling shed and remove and properly dispose of all metal and other materials associated with the tear down.

**6.8** Defendant shall identify and plug the numerous DIs in Drainage Area 1 and the former Planing Mill area that are not identified in the current SWPPP map.

**6.9** Defendant shall demonstrate on-site storm water containment and discharge reduction measures in the area immediately up-gradient of the SW-1 discharge sampling point. The Defendant has established a storm water infiltration/retention area up-gradient of the SW-1 sampling point. Additional improvements in this area will be implemented to significantly reduce the likelihood of off-site discharges. The SW-1 sampling point shall be repositioned to the east to match the actual eastern property boundary alignment and an additional containment berm, which will increase storm water capacity. A weir-notch discharge point will be installed in the berm. The Defendant shall update the SWPPP to reflect these changes and monitor this location on an ongoing basis to document that discharge does not leave the site during most rain events. This

location shall be subject to ongoing monitoring and photo documentation to confirm no discharge; however, during rare occasions of extreme precipitation this point would be sampled in accordance with Storm Water Permit requirements if off-site discharge occurs. Defendant shall include monitoring and photo documentation with the documents provided to Baykeeper in accordance with Paragraph 18 below.

**6.10** Defendant intends to utilize the full paved portion of Drainage Area 2 for log storage and chipping. Defendant will install new asphalt berms to direct storm water discharge that does not flow to SW-1 to un-paved vegetated infiltration areas. The updated SWPPP map will confirm and identify all areas of log storage and wood chipping at the Samoa Facility.

**6.11** Defendant shall update the SWPPP in accordance with Paragraphs 6.7 through 6.10.

**7. Modification of BMPs.** Defendant shall not unilaterally abandon or modify any of the BMPs described above unless necessary to maintain or maximize storm water system or BMP performance. Defendant shall provide notice to Baykeeper within ten (10) business days of making the change, which includes a description of the change and explanation of why the change was needed to improve or maintain storm water quality or system performance. This notice requirement does not include normal BMP maintenance, replacement or minor adjustments. Baykeeper shall provide comments regarding Defendant's modifications or abandonment of any BMP at the Facilities, if any, within ten (10) days of receipt. Any failure to comment on the proposed modifications by Baykeeper, shall not be deemed to constitute agreement with the proposals or be deemed to construe a waiver of any of Baykeeper's rights or remedies under this Consent Decree. Consultation pursuant to this section shall not constitute an action plan as described in Paragraph 14 of this Consent Decree, or be deemed to waive any of Defendant's obligations with respect to the Action Plan.

**8. Visual Observations.** During the life of this Consent Decree, Defendant shall conduct visual observations at each discharge location during every Qualifying Storm Event(s) ("QSE")[3] that produces a discharge that occurs during scheduled operating hours at each of the Facilities.

---

[3] "Qualifying Storm Events" under the Storm Water Permit are those events in which (i) the samples taken are preceded by at least three (3) working days during which no storm water discharges from the Facility have occurred; (ii) the samples are collected within the first hour that flow is observed; and (iii) the samples are collected during scheduled facility operating hours.

[Proposed] CONSENT DECREE 8

**9. Employee Training Program.** Defendant shall develop and implement an employee training and reporting program that includes: 1) annual meetings of the Storm Water Pollution Prevention Team, held within twenty (20) days between prior to the start of the Wet Seasons (October 1), and again within the month of February, so as to ensure the capturing of the first event and subsequent storm events in its sampling analysis as well as to ensure that the monthly Wet Season visual monitoring is properly conducted and reported in the Annual Report; 2) Defendant shall train all employees responsible for SWPPP implementation and/or monitoring on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly. Defendant shall train individual employees on their specific responsibilities in implementing BMPs. The training must include proper handling (collection, storage and disposal) of all potential pollutant sources at the Facilities; and 3) Defendant shall train all employees at the Facilities on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges.

**10. Storm Water Pollution Prevention Plan.** Within sixty (60) days of the Effective Date, Defendant shall amend the Facilities' SWPPPs to incorporate the requirements and BMPs set forth in Section X of the Storm Water Permit and Paragraphs 6.1 through 6.11 of this Consent Decree, and submit the updated SWPPPs to Baykeeper within ten (10) business days thereafter. Baykeeper shall have thirty (30) days from receipt of an amended SWPPP to propose any changes to the SWPPP. Within thirty (30) days of notification by Baykeeper of any proposed changes to a SWPPP, Defendant shall make all of Baykeeper's changes to the amended SWPPP, or shall justify in writing why any comment is not incorporated. Defendant shall not be obligated to incorporate any of the SWPPP changes Baykeeper may recommend (subject to dispute resolution in Paragraphs 23 and 24), but shall give good faith consideration to those measures, and provide a written explanation as to why Defendant declined to implement those additional pollution prevention measures. Upon request by Baykeeper, Defendant agrees to meet and confer in good faith (at the Facility requiring the SWPPP changes, if requested by Baykeeper) regarding the contents and sufficiency of the SWPPP. Compliance with the SWPPP, as amended in accordance with this Paragraph, shall, at all times, be a requirement of this Consent Decree.

Defendant shall revise the Facilities' SWPPPs if there are any material changes in the Facilities' operations, including, but not limited to, changes to storm water discharge points or BMPs. These SWPPP revisions shall occur within thirty (30) days of the changes in operations.

**11. Future Storm Water Pollution Prevention Plan Amendments.** Defendant shall provide Baykeeper with a copy of any amendments to either of the Facilities' SWPPPs made during the Term of the Consent Decree within ten (10) days of such amendment.

**12. Sampling Frequency and Performance Standards.** During the 2017-2018 reporting year, Defendant shall collect and analyze samples from six (6) QSE from each of the Facilities' discharge locations, identified in each of the Facilities' SWPPPs, provided that many QSE discharges have occurred. If sampling test results from the six (6) sampled QSE at each of the Facilities in the 2017-2018 Reporting Year exceed the Table 1 Parameter Limits less than twice for the same parameter at either Facility, that Facility may elect to only collect and analyze samples from four (4) QSE in the 2018-2019 Reporting Year, from the Sample Points identified in the Facilities' SWPPPs, under this Consent Decree. If two (2) or more exceedances of the same parameter at either of the Facilities are reported, that Facility will collect and analyze samples from six (6) QSE, during the 2018-2019 Reporting Year. During the 2019-2020 and 2020-2021 reporting years, Defendant may elect to only collect and analyze samples from four (4) QSE from each of the Facilities, at all sampling points identified in each of the Facilities' SWPPPs, under this Consent Decree. If Defendant receives storm water sampling data demonstrating an exceedance of a Table 1 Parameter Limit at either of the Facilities during the term of this Consent Decree, Defendant shall provide Baykeeper with written notice of the exceedance within (10) days. If Defendant receives storm water sampling data demonstrating two or more exceedances of the same Table 1 Parameter Limit at either of the Facilities during a single Reporting Year under this Consent Decree, Defendant shall provide Baykeeper with an Action Plan for that Facility in compliance with the "Action Plan" requirements set forth below in Paragraph 14 of this Consent Decree.

**13. Sampling Parameters.** Each of the storm water samples collected pursuant to Paragraph 12 of this Consent Decree shall be analyzed for each of the constituents listed in Table 1. With the exception of pH testing, all storm water analysis shall be done by a laboratory accredited by the State of California. Samples collected from each of the Facilities shall be delivered to the laboratory as soon as possible to

[Proposed] CONSENT DECREE 10

4:16-cv-06970-HSG

ensure that sample "hold time" is not exceeded. Analytical methods used by the laboratory shall be adequate to detect the individual constituents at or below the limits specified in Table 1. Sampling results shall be provided to Baykeeper within fourteen (14) days of Defendant's receipt of the laboratory report from each sampling event pursuant to the Notice provisions of Paragraph 39 herein.

**14. Action Plan.** Defendant agrees to submit an Action Plan: 1) if required pursuant to Paragraphs 5 and 12, or if Defendant fails to collect and analyze samples from the number of QSE required in Paragraph 12 above, or if Defendant fails to comply with any other requirements of the Storm Water Permit, that complies with the following requirements: Defendant shall prepare a detailed, written statement discussing and describing the exceedances or failure to collect and analyze samples from the required number of QSE, the possible cause(s) and/or source of the exceedances or failure(s), additional measures that are designed to address and eliminate the problem and future exceedances or failure(s), and an expeditious time line for implementing said additional measures (the "Action Plan"). The Action Plan shall be provided to Baykeeper no later than thirty (30) days after Defendant's receipt of the sample results causing two exceedances of the same Table 1 Parameter Limit within a single Reporting Year, or failure to sample the required number of QSE at the close of any reporting year.

**15. Additional Measures.** Such additional measures under an Action Plan, to the extent reasonably feasible, shall be implemented within sixty (60) days after the due date of the Action Plan. Within thirty (30) days of implementation, the Facilities' SWPPPs shall be amended to include all additional BMP measures designated in the Action Plan.

**16. Baykeeper Review of Action Plan(s).** Baykeeper may review and comment on an Action Plan and suggest any additional pollution prevention measures it believes are appropriate within fifteen (15) days of receipt of any Action Plan under this Consent Decree; however, Baykeeper's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Plan. Defendant shall not be obligated to perform any of the pollution prevention measures Baykeeper may recommend (subject to dispute resolution in Paragraphs 23 and 24), but shall give good faith consideration to those measures, and provide a written explanation as to why Defendant declined to implement those additional pollution prevention measures. Upon request by Baykeeper, Defendant agrees to meet and confer in

good faith (at the Facility requiring the Action Plan, if requested by Baykeeper) regarding the contents and sufficiency of the Action Plan.

**17. Site Inspections.** In addition to any site inspections conducted as part of the settlement process and the meet-and-confer process concerning an Action Plan as set forth above, Defendant shall permit representatives of Baykeeper to perform up to two (2) physical inspections at each of the Facilities during the term of this Agreement. These inspections may be performed by Baykeeper's counsel and consultants and may include sampling, photographing, and/or videotaping. All sampling shall be conducted by a qualified sampler, with a split sample provided to both Baykeeper and Defendant at the time of sampling. Baykeeper shall provide Defendant with a copy of all sampling reports, photographs and/or video within a reasonable time after the site inspection, not to exceed fourteen (14) days after Baykeeper's receipt of any sampling reports from split samples, and seven (7) days after the site inspection, for photographs and/or video. Baykeeper shall provide at least five (5) business days advance notice of such physical inspection, except that Defendant shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Defendant shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by Baykeeper may proceed. Defendant shall document alterations to each of the Facilities' conditions related to storm water management during the period between receiving Baykeeper's initial advance notice and the start of Baykeeper's inspection that Defendant would not otherwise have made but for receiving notice of Baykeeper's request to conduct physical inspections of the Facilities. The documentation shall include the date the alterations related to storm water management were planned and/or scheduled, the date of the issuance of any purchase order and/or maintenance order, if any, for the alterations, and the date the alterations were implemented. Nothing herein shall be construed to prevent Defendant from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by Baykeeper or at any time.

**18. Defendant Communications with Regional and State Boards.** During the Term of this Consent Decree, Defendant shall provide Baykeeper with copies of all documents and official communications submitted to the Regional Board or the State Board concerning BMPs, storm water or

[~~Proposed~~] CONSENT DECREE 12

4:16-cv-06970-HSG

storm water discharges from the Facilities, or compliance with Storm Water Permit or the Clean Water Act. These documents and official communications shall include, but are not limited to, all documents and reports submitted to the Regional Board and/or State Board as required by the Storm Water Permit, and all official correspondence between the Regional Board or the State Board and the Defendant or their agents. Such documents and reports shall be provided to Baykeeper pursuant to the Notice provisions of Paragraph 39 herein contemporaneously with Defendant's transmission of said documents to the Regional Board or the State Board.

**MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS**

**19. Mitigation.** As mitigation of the Clean Water Act violations alleged in Baykeeper's Complaint, Defendant agrees to pay the sum of Thirty-Five Thousand Dollars ($35,000) to Friends of the Dunes for projects to improve the environmental habitat and/or water quality in Humboldt Bay or the Humboldt Bay Watershed. The mitigation payment shall be made directly to Friends of the Dunes and sent to: Friends of the Dunes, 220 Stamps Ln, Arcata, CA 95521. Friends of the Dunes shall provide notice to the Parties within ten (10) days of a decision upon when and how the funds will be applied to better the environmental habitat, ecosystem, and/or water quality, in Humboldt Bay or the Humboldt Bay Watershed. The payment shall be sent within seven (7) calendar days of the Effective Date.

**20. Baykeeper's Litigation Costs.** To partially reimburse Baykeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, Defendant shall pay a total of Eighty Thousand Dollars ($80,000). The payment shall be made within thirty (30) days of the Effective Date. The payment shall be made via wire transfer or check, made payable to: "ATA LAW GROUP" and delivered by overnight delivery, unless payment via wire transfer, to: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

**21. Compliance Monitoring and Oversight.** Defendant agrees to partially defray Baykeeper's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring of Defendant's compliance with this Consent Decree in the amount of Fourteen Thousand Dollars ($14,000). Payment shall be made within ten (10) days after the Effective Date. Compliance monitoring activities may include, but shall not be limited to, reasonable investigative, expert, consultant and

[Proposed] CONSENT DECREE　　　　　　　13

4:16-cv-06970-HSG

attorneys' fees and costs, site inspections, review of water quality sampling reports, review of annual reports, discussions with representatives of Defendant concerning any Action Plan(s) referenced above, potential changes to compliance sampling and analysis, and compliance-related activities. The payment shall be made via wire transfer or check, made payable to: "ATA LAW GROUP" and delivered by overnight delivery, unless payment via wire transfer, to: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

**DISPUTE RESOLUTION**

**22. Jurisdiction of the Court.** The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies, including contempt. Within five (5) days of the Effective Date, the Parties shall file with the Court a Stipulation and Order providing that the Complaint and all claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

**23. Meet and Confer.** If a dispute under this Consent Decree arises or the Parties believe that a breach of this Consent Decree has occurred, the Settling Parties agree to meet and confer:

**23.1** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Parties of the matter(s) in dispute. The Parties shall schedule a meet and confer (either telephonically or in person) within ten (10) days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without mediation or court intervention.

**23.2** If the Parties fail to meet and confer, or cannot resolve a dispute through the informal meet and confer process, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of California, Northern District. The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded pursuant to the provisions set forth in Section 505(d) of the Clean Water Act.

**23.3** The Parties shall be entitled to seek fees and costs incurred in any such dispute resolution procedure or action, to remedy the alleged breach(es) of the Consent Decree, pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §§ 1319, and 1365(d), and applicable case law interpreting such provisions.

**MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**24. Baykeeper's Waiver and Release.** Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, and each of their successors and assigns releases Defendant, their officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint up to the Effective Date.

**25. Defendant's Waiver and Release of Baykeeper.** Defendant, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint up to the Effective Date.

**MISCELLANEOUS PROVISIONS**

**26. No Admission of Liability.** Neither this Consent Decree, the implementation of additional BMPs or any payment pursuant to the Consent Decree shall constitute or be construed as a finding, admission, or acknowledgement of any fact, law, rule, or regulation. Defendant maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

**27. Submission of Consent Decree to DOJ.** After agreement of the Parties to this proposed Consent Decree, Baykeeper will submit this Consent Decree to the United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency for the statutory

[Proposed] CONSENT DECREE    15

4:16-cv-06970-HSG

review period pursuant to 33 U.S.C. § 1365(c) of at least 45 days prior to the submittal of this Consent Decree to the Court for entry. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within thirty (30) days.

**28. Early Termination.** If Defendant should attempt to cease industrial operations at either of the Facilities and file a Notice of Termination ("NOT") under the Industrial Storm Water Permit prior to the termination date of this Consent Decree, Defendant shall send Baykeeper a copy of the proposed NOT thirty (30) days prior to its submittal to the Regional Water Board. Baykeeper reserves all rights to comment on the proposed NOT and take any necessary action before the Regional Water Board to dispute the validity of the NOT. Should the NOT be approved by the Regional Water Board, within ten (10) days of the Regional Water Board's approval Defendant shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper. In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 38, Defendant shall notify Baykeeper within ten (10) days of the transition.

**29. Execution in Counterparts and Signatures.** The Consent Decree may be executed in one of more counterparts, which, taken together, shall constitute one original document. The Parties' signatures to this Consent Decree may be electronic or original, and whether transmitted by courier, mail, email or facsimile, shall be deemed binding.

**30. Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and Paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

**31. Authority to Sign.** The undersigned representatives for Baykeeper and Defendant certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree, which have been read, understood and agreed to.

**32. Integrated Consent Decree**. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

**33. Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**34. Choice of Law.** This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

**35. Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter.

**36. Negotiated Agreement.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

**37. Modification of the Agreement.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

**38. Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

**39. Notice.** Unless otherwise stipulated to by the receiving party, any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to Baykeeper pursuant to this Consent Agreement shall be sent via electronic mail to the email addresses listed below:

| | |
|---|---|
| Jennifer Kalt | Anthony M. Barnes |
| Director, Humboldt Baykeeper | Jason R. Flanders |
| 600 F Street, Suite 3 #810, | Aqua Terra Aeris Law Group LLP |
| Arcata, CA 95521 | 828 San Pablo Ave., Ste. 115B |
| jkalt@humboldtbaykeeper.org | Albany, CA 94706 |
| | Phone: (415) 326-3173 |
| | Email: amb@atalawgroup.com |

Any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to Defendant pursuant to this Consent Agreement shall be sent via electronic mail to the email addresses listed below:

Neal Ewald  
Senior Vice President  
Green Diamond Resource Company  
California Redwood Company  
P.O. Box 68  
Korbel, CA 95550  
(707) 668-4400  
Email: newald@greendiamond.com

Christopher J. Carr  
Morrison Foerster LLP  
425 Market St # 30  
San Francisco, CA 94105  
Phone: (415) 268-7246  
Email: ccarr@mofo.com

Each Party shall promptly notify all other Parties of any change in the above-listed contact information.

40. **Force Majeure.** No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's reasonable control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24-hour storm event, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

APPROVED AS TO CONTENT

Dated: 7/5, 2017    By: _Jennifer Kalt_  
Jennifer Kalt, Director  
Humboldt Baykeeper

Dated: 7/6, 2017    By: _Neal Ewald_  
Neal Ewald, Senior Vice President  
California Redwood Company

[Proposed] CONSENT DECREE     18

4:16-cv-06970-HSG

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: July 6, 2017, 2017

By: _____
Anthony M. Barnes
Attorneys for Plaintiff

MORRISON FOERSTER LLP

Dated: July 10, 2017

By: _____
Christopher J. Carr
Attorneys for Defendant

Good cause appearing, IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Dated: September 6, 2017

_____
HONORABLE HAYWOOD S. GILLIAM, JR.